The TAYLOR WINE COMPANY, INC., Plaintiff-Appellee,

v.

BULLY HILL VINEYARDS, INC., Defendant-Appellant.

No. 272, Docket 78–7272.

United States Court of Appeals, Second Circuit.

Argued Dec. 11, 1978.

Decided Dec. 29, 1978.

James M. Hartman, Rochester, N. Y. (Harris, Beach, Wilcox, Rubin & Levey, Rochester, N. Y., of counsel), for defendant-appellant.

John Stuart Smith, Rochester, N. Y. (Frank H. Penski, Nixon, Hargrave, Devans

---

& Doyle, Rochester, N. Y., of counsel), for plaintiff-appellee.

Before TIMBERS and MESKILL, Circuit Judges, and DOOLING, District Judge.[*]

PER CURIAM:

We are again called upon to consider the restrictiveness of a preliminary injunction against the use by Bully Hill Vineyards, Inc. ("Bully Hill") of the "Taylor" name or any colorable imitation thereof as a trademark in the merchandising of Bully Hill wines, pending the outcome of the Taylor Wine Company's trademark infringement and unfair competition lawsuit against Bully Hill. Bully Hill is owned by Walter S. Taylor, who, although he is the grandson of the founder of the Taylor Wine Company, has no present connection with Taylor Wine.

On January 3, 1978, when we last considered this case, we decided that a preliminary injunction was necessary but we believed that the provisions contained in the one issued by Judge Burke were too broad. *Taylor Wine Co. v. Bully Hill Vineyards, Inc.*, 569 F.2d 731 (1978). We remanded to Judge Burke with these instructions:

> We have concluded that neither Bully Hill nor Walter S. Taylor should use the "Taylor" name as a trademark, but that the defendant may show Walter's personal connection with Bully Hill. He may use his signature on a Bully Hill label or advertisement if he chooses, but only with appropriate disclaimer that he is not connected with, or a successor to, the Taylor Wine Company. He must also be restrained from using such words as "Original" or "Owner of the Taylor Family Estate." He must, in short, not pretend that his grandfather or his father passed anything on to him as a vintner. To the extent that Walter S. Taylor can

exploit his *own* knowledge and techniques as a person, he may do so with the limitations noted, if he refrains from trading on the good will of the plaintiff company by competing unfairly.

> Since these matters will require careful delineation, we remand to the District Court with a suggestion that it request the submission of appropriate proposed orders from the parties and that it enter an order in the light of this opinion in language adequate to make possible a contempt proceeding if its decree is violated.

Id. at 736 (emphasis in original).

The parties were unsuccessful in their attempts to reach an agreement on specific wording for an order and they each submitted proposed orders. Judge Burke faced a difficult task. Walter Taylor, an artist as well as an enologist, had already demonstrated his ability to improvise and his flair for the creative.[1] In an attempt to comply with our instructions on remand, and with full knowledge of Walter Taylor's talents, Judge Burke adopted the Taylor Wine Company proposal and issued the following order:

> I. Bully Hill Vineyards, Inc., its officers, agents, representatives and successors, and all persons acting in concert or participation with it, are hereby enjoined from:

> (a) Using the word Taylor or any colorable imitation, or any other mark, word, or name which is confusingly similar to Taylor, as or as part of any trademark, in connection with any labeling, packaging materials, advertising, or promotional materials for any wine or wine related products of Bully Hill Vineyards, Inc.

> (b) Otherwise engaging in any act of unfair competition against the Taylor

---

[*] Hon. John F. Dooling, Jr., Senior District Judge of the Eastern District of New York, sitting by designation.

1. For example, in response to the first injunction, which prohibited Bully Hill's use on labels of portraits of Walter S. Taylor's ancestors who had been associated with Taylor Wine Company, Walter S. Taylor began to use labels with his own sketches of unnamed ancestors who, he claimed, had no connection with Taylor Wine Company.

Wine Company, Inc., or trading upon its goodwill.

(c) From representing, stating or implying, directly or indirectly, by words, designs, illustrations, pictures or conduct that:

(1) Bully Hill Vineyards, Inc. or Walter S. Taylor is connected in any way with or a successor to The Taylor Wine Company.

(2) Any product made, offered for sale, sold or distributed by Bully Hill Vineyards, Inc., is authorized, sponsored, endorsed, produced, or otherwise connected with The Taylor Wine Company, Inc.

(3) Bully Hill Vineyards, Inc., is the "Original" Taylor Wine Company.

(4) Walter S. Taylor or Bully Hill Vineyards, Inc. is the owner of the Taylor Family Estate.

(5) Bully Hill Vineyards, Inc. was founded or established at any time prior to 1970.

(6) Any of Walter S. Taylor's ancestors are or were connected or associated with or the predecessors of Bully Hill Vineyards, Inc. or that they passed anything on to Walter S. Taylor or Bully Hill Vineyards, Inc. in the art and science of [grape]-growing or winemaking; pursuant to this provision no portraits or other likenesses of such ancestors shall be used.

(7) Bully Hill Vineyards, Inc. is or has been the Taylor Family wine company.

(8) Bully Hill Vineyards, Inc. is or has been the home of Taylor wines or Taylor family wines.

(9) Bully Hill Vineyards, Inc. uses the Taylor family wine recipes.

(10) The restaurant and museum presently located at or adjacent to Bully Hill Vineyards, Inc. are connected in any way with Taylor Wine Company, Inc.

II. Bully Hill Vineyards, Inc., its officers, agents, representatives, successors, and persons acting in concert or partici-pation with it, shall be permitted to show Walter S. Taylor's connection with Bully Hill by using in labeling, packaging materials, advertising, or promotional materials for Bully Hill Vineyards, Inc., products the signature of Walter S. Taylor with a true statement of his connection with Bully Hill, if:

(a) The signature is not used as a trademark.

(b) The signature does not appear on the front labels of bottles of wines produced or sold by Bully Hill Vineyards, Inc.

(c) The Bully Hill Vineyards, Inc. trademark appears on the same label, advertisement, side, surface, or page in a prominent and easy to read manner.

(d) The lettering and size of the signature is no larger than one-fourth the size of the lettering of the Bully Hill Vineyards, Inc., trademark on the same label, advertisement, side, surface, or page.

(e) The signature shall not be larger, more prominent nor more conspicuous than the smallest mandatory label information (pursuant to the regulations of the Bureau of Alcohol, Tobacco and Firearms) appearing on the labels of Bully Hill Vineyards, Inc. products.

(f) The signature shall appear only within the lower right hand portion of the label, advertisement or page.

(g) The signature appears in direct conjunction with the following disclaimer:

"Not Connected With
Or A Successor To The Taylor
Wine Company"

The disclaimer shall consist of three lines of type or script in precisely the same form as appears above with no additions or deletions. The style of type or script used for the disclaimer should be varied, however, to be consistent with that used in other places

on any label, advertisement or page provided that the style is legible.

It is this modified preliminary injunction which is before us on appeal. Bully Hill claims that the order constitutes a clear and excessive abuse of judicial discretion which fails to comport with the guidelines established by this Court in its earlier remand. Because we have already decided that the grant of a preliminary injunction was proper, we need only consider here whether the scope of this modified preliminary injunction comports with our guidelines and is appropriate under the circumstances.[2] Judge Burke's task on remand was not an easy one and it was not made any easier by the antics of Walter S. Taylor.[3] Indeed, we suspect that some of the Bully Hill wine bottle labels proposed by Walter S. Taylor were designed more to confound his adversary in this litigation than to confuse the public. Rather than concerning ourselves with an analysis of Walter Taylor's intentions, however, we must decide whether his use of language and art form is likely to "confuse the public into believing that his product originates from the Taylor Wine Company which is so well-known." *Id.* at 736. That is all the protection the preliminary injunction should provide.

We conclude that the modified preliminary injunction ordered by Judge Burke generally conforms to our guidelines and is generally appropriate to the circumstances of this case. Most of the provisions of the order are both useful and fitting. Although, as Lord MacNaghten observed, "Thirsty folk want beer, not explanations," *Montgomery v. Thompson*, [1891] A.C. 217, 225 (the famous *Stone Ale* case), and the same is no doubt true of those who thirst for wine, the disclaimer ordered in this case is a reasonable one. This can also be said of most of the other details of Judge Burke's order. However, paragraphs I(c)(6), II(b) and (e) of the order are overly restrictive. In the interest of judicial expediency and economy and in the hope that the parties may soon proceed to the merits of this case, we modify the order as follows:

(1) The last clause of paragraph I(c)(6), which reads "pursuant to this provision no portraits or other likenesses of such ancestors shall be used," is deleted.

(2) Paragraph II(b), prohibiting Walter S. Taylor's signature from appearing on the front labels of Bully Hill wines, is deleted.

(3) Paragraph II(e), limiting the size of Walter S. Taylor's signature, is deleted and the following is substituted therefor:

"(d) The signature shall be no larger, nor more prominent nor more conspicuous than the disclaimer and may appear only on the same label as the disclaimer, as provided for in subparagraph (f)."

(4) Paragraphs II(c), (d), (f) and (g) are redesignated, respectively, Paragraphs II(b), (c), (e) and (f).

In all other respects we find Judge Burke's order entirely proper. The order of the district court is affirmed as modified. No costs.

---

**2.** Assuming arguendo that Bully Hill's proposed order conformed to the guidelines established in our prior opinion, Judge Burke's refusal to accept it would not in itself warrant reversal. Nor does Judge Burke's total acceptance of Taylor Wine's proposal in itself require reversal.

**3.** For example, at oral argument the panel was shown two wine labels allegedly printed after the issuance of the order on appeal: one showing a sketch of an unnamed woman, apparently an ancestor of Walter Taylor's, wearing a "Lone Ranger" type mask and one showing a sketch of an unnamed man, again apparently an ancestor, with a heavy black line drawn across his eyes.